Filed 2/15/22  P. v. Ibarra CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and<br>　　　Respondent,<br><br>　　　v.<br><br>JOVAN IBARRA,<br><br>　　　Defendant and<br>　　　Appellant. | B312054<br><br>(Los Angeles County<br>Super. Ct. No. TA110296-01) |

　　　APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

　　　Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jovan Ibarra, convicted in 2009 following a jury trial of first degree murder and three counts of attempted willful, deliberate and premeditated murder, with true findings as to firearm-use and criminal street gang enhancements, appeals the superior court's summary denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] without first appointing counsel and inviting briefing. Although the court erred by denying the petition without appointing counsel (*People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*) ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"]), the error was harmless because Ibarra's jury was not instructed on either the felony-murder rule or the natural and probable consequences doctrine and the jury's findings necessarily mean it found he had acted with express malice when committing the crimes, making Ibarra ineligible for resentencing under section 1170.95 as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Ibarra's Conviction for First Degree Murder and Attempted Willful, Deliberate and Premeditated Murder*

Ibarra, together with Eduardo Mercado and Kaylene Calderon, was charged in a four-count information filed July 1, 2010 with the murder of Anthony Huerta (§ 187, subd. (a)) and the attempted willful, deliberate and premeditated murder of Jose Huerta, Kiogi Harden and Jesse Huerta (§§ 187, subd. (a), 664, subd. (a)). The information additionally alleged that Ibarra

_____

[1]     Statutory references are to this code.

had personally and intentionally discharged a firearm proximately causing the death of Anthony Huerta and great bodily injury to Jose Huerta within the meaning of section 12022.53, subdivision (d), and that the crimes had been committed for the benefit of a criminal street gang.

The evidence at trial established that brothers Anthony and Jesse Huerta, their cousin Jose Huerta, and Harden were socializing in the front yard of Harden's home on the evening of July 30, 2009 when a car cruised past them, made a U-turn and came back, stopping at the curb in front of Harden's house.[2] A young Hispanic man holding a gun got out of the rear passenger side of the car.  The man pointed the gun at the Huertas and Harden and asked where they were from.  At the same time, according to Erika Palomino, who witnessed the shooting, a passenger in the front seat leaned out of the car with his arm extended.  Jesse Huerta yelled he did not "bang."  The first gunman called out, "This is 70's, motherfuckers" and began shooting.  Anthony Huerta was struck by a bullet and fell to the ground.

As the shooting started, Harden dove off the front porch and climbed over a fence to the backyard.  Jose Huerta, who was sitting on a low wall along the driveway less than 10 feet from the shooter, pushed backward over the wall and, as he fell, was struck by a bullet fragment in the buttock.  He scrambled behind a van in the neighboring driveway.  Although he could not see the

---

[2]     At the Attorney General's request we augmented the record on appeal to include the record from Ibarra's direct appeal, *People v. Ibarra*, B233062, which included the reporter's transcript of the trial, as well as the clerk's transcript containing the court's instructions and the jury's verdict.

person who had fallen on the ground, he saw the shooter walk toward the victim and heard an additional round fired before the hammer struck repeatedly on the empty chamber. (Anthony Huerta, who had been shot a second time at point blank range while lying wounded on the ground, died at the hospital from a chest wound.) Jose Huerta also saw a second man leaning from the front passenger seat of the car with a gun and heard shots from a second, louder gun.

The shooter in the Harden yard returned to the car, which left the scene. As the car drove past Palomino, it slowed; and she saw four occupants, two of whom, including the female driver, smiled at her.

During the investigation of the shooting by the Los Angeles County Sheriff's Department, Jose Huerta and Palomino identified Ibarra from a photographic lineup as the shooter they had seen outside the car. They also identified Calderon as the driver of the car. Palomino identified Mercado as the individual in the front passenger seat of the car. Testifying at trial Palomino again identified Ibarra as the shooter outside the car, Mercado as the front seat passenger and Calderon as the driver. Jose Huerta identified Ibarra and Calderon.

The People's gang expert testified Ibarra and Mercado were members and Calderon a member or associate of the CV70's, the second largest criminal street gang in Compton. The shooting occurred in territory claimed by Compton Varrio Segundo, a rival of the CV70's. Based on hypothetical facts drawn from the circumstances of the shooting, the gang expert opined it had been committed for the benefit of the CV70's.

The jury convicted Ibarra on all four counts and found true the firearm-use and criminal street gang special allegations.[3] The court sentenced him to an aggregate indeterminate state prison term of 160 years to life, including consecutive 25-year-to-life enhancements for the murder of Anthony Huerta and the attempted murder of Jose Huerta based on the jury's true findings that Ibarra had personally and intentionally discharged a firearm causing Anthony Huerta's death and great bodily injury to Jose Huerta.

We affirmed Ibarra's conviction and sentence, rejecting his contention his trial counsel had provided ineffective assistance by failing to object to hearsay statements contained in the opinion testimony of the People's gang expert in violation of Ibarra's Sixth Amendment confrontation rights. (*People v. Ibarra* (Oct. 17, 2012, B233062) [nonpub. opn.].)

2. *Ibarra's Petition for Resentencing*

On February 16, 2021 Ibarra, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Ibarra checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Ibarra attached

---

[3] Mercado was also convicted on all four counts. Calderon was found not guilty on all counts.

as exhibits to his petition a copy of CALCRIM No. 520, which defines express and implied malice and includes the explanation implied malice requires proof the defendant intentionally committed an act "[t]he nature and probable consequences" of which were dangerous to human life, and a copy of CALCRIM No. 3149, which identifies the requirements for a finding the defendant personally and intentionally discharged a firearm causing death or great bodily injury and includes the explanation an act causes death or great bodily injury if the death or injury is the "direct, natural and probable consequence of the act."

On March 10, 2021 the superior court summarily denied the petition without appointing counsel, finding petitioner had failed to make a prima facie showing he was entitled to relief. The court explained in its minute order, "The petitioner was convicted of first degree murder. The jurors were never instructed on the theory of felony murder. The only instruction on the theory of natural and probable consequence doctrine was given as [to] counts 2, 3, and 4, the attempted murders of Jose Huerta, Kiogi Harden and Jesse Huerta. All of which he was also convicted with the finding that the attempted murders were willful[,] deliberate and premeditated. The only theory available to reach first degree murder was willful, deliberate, and premeditated murder. [¶] Therefore, due to the jury's findings as stated and pursuant to Penal Code section 189(e), the petitioner does not qualify for resentencing [under] Penal Code section 1170.95."

Ibarra filed a timely notice of appeal.

# DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder.  (§§ 188, subd. (a)(3), 189, subd. (e); see *Lewis*, *supra*, 11 Cal.5th at p. 957.)[4]  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)),[5] and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that

---

[4]      As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

[5]      Prior to enactment of Senate Bill 775 the requirement to appoint counsel was set forth in subdivision (c) of section 1170.95.

he or she is entitled to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile, supra*, 10 Cal.5th at pp. 853-854.)

8

### 2. *The Error in Denying Ibarra's Petition Without Appointing Counsel Was Harmless*

In his opening appellate brief, filed four weeks after the Supreme Court's decision in *Lewis*, *supra*, 11 Cal.5th 952, Ibarra argued the superior court erred in denying his petition without first appointing counsel and that this error violated his federal and state constitutional rights to due process. As discussed, the *Lewis* Court held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c). (*Lewis*, at p. 963.) Because Ibarra checked all the necessary boxes on his form petition, he is correct that the superior court erred by denying his petition without first appointing counsel.

As Ibarra recognizes, however, the *Lewis* Court also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 973-974.)[6] The Court explained, "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction. [Citations.] However, we have held that 'if a [habeas corpus]

---

[6] Ibarra does not attempt to reconcile his argument that the failure to appoint counsel violated his federal constitutional right to due process with his acknowledgment on the following page of his opening brief that the Supreme Court in *Lewis* held it was state law error only.

9

petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citation.] When 'an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him.' [Citations.] [¶] For the same reasons, a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process. [Citation.] At this point, the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so." (*Id.* at pp. 972-973.)

The record of conviction here established that Ibarra was ineligible for resentencing under section 1170.95 as a matter of law. With respect to the charge of murder, the trial court instructed the jury with CALCRIM Nos. 500, defining homicide; 520, defining express and implied malice; and 521, defining first and second degree murder and expressly stating, to find a defendant guilty of first degree murder, the People must prove he or she acted willfully, deliberately and with premeditation. There was no felony-murder instruction and no instruction that Ibarra could be found guilty of murder under the natural and probable consequences doctrine. As to attempted murder, the court instructed with CALCRIM Nos. 600, defining the crime of attempted murder (including a "kill zone" theory), and 601, explaining that, to find that an attempted murder was done willfully and with deliberation and premeditation, the jury had to find the defendant "intended to kill when they acted" and "decided to kill before acting." Thus, both the murder and

10

attempted murder counts required a finding of express malice before the jury could conclude Ibarra had acted willfully, deliberately and with premeditation. And contrary to the superior court's ruling denying Ibarra's petition, there was no natural and probable consequences instruction on the attempted murder counts.

As Ibarra points out in his reply brief, when instructing the jury on the general principles of aiding and abetting with CALCRIM No. 400, the court included language intended to be given only when the prosecution is relying, in whole or in part, on the natural and probable consequences doctrine: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."[7] But the court did not instruct that any of those specific circumstances existed in this case, and the prosecutor did not argue any were present. Moreover, even if, as Ibarra suggests, that language, in theory and in isolation, might have suggested that Ibarra or Mercado could be guilty of murder or attempted murder as an accomplice to a nonhomicide target offense under the natural and probable consequences doctrine, as discussed, the jury's findings that Ibarra had acted with premeditation in committing both the murder and the attempted murders

---

[7] The bench notes to CALCRIM No. 400 explain with respect to this language, included in brackets in the form instructions, "If the prosecution is also relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph."

11

necessarily required, under the instructions given, a finding of express malice, precluding resentencing as a matter of law.[8]

Similarly, the jury's finding that Ibarra personally and intentionally discharged a firearm proximately causing Anthony Huerta's death and great bodily injury to Jose Huerta, under the circumstances here, established that Ibarra was the actual killer and thus ineligible for resentencing on the charge of murder under section 1170.95 as a matter of law. To be sure, the section 12022.53, subdivision (d), firearm enhancement does not necessarily require proof the defendant acted with express malice. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598.) For example, in a prosecution for murder based on the natural and probable consequences doctrine, where the target offense was shooting at an inhabited building, a defendant could be convicted of murder and intentionally discharging a firearm that proximately caused the death of the victim based on his participation in the target crime. But the jury was not presented with any theory of vicarious liability here, and its finding that Ibarra had personally fired the shot that caused Anthony Huerta's death established as a matter of law Ibarra's ineligibility for resentencing under section 1170.95.

---

[8] As discussed, Senate Bill 775 amended section 1170.95, effective January 1, 2022, to expressly include within its reach certain convictions for attempted murder and voluntary manslaughter. Ibarra's petition for resentencing, filed before Senate Bill 775's effective date, did not seek resentencing on his attempted murder convictions, and he does not argue on appeal that we should remand his case to permit him to raise that issue in the superior court.

## DISPOSITION

The postjudgment order denying Ibarra's petition for resentencing under section 1170.95 is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.